# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.: 19-30359 |
| | Chapter 11 |
| JM Grain, Inc., | |
| Debtor. | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503, 507, AND 552, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

JM Grain, Inc., as debtor in possession ("**Debtor**") in the above-captioned Chapter 11 case submits this Motion (this "**Motion**"), pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an interim order (the "**Interim Order**") in substantially the form as **Exhibit A** attached and a final order (the "**Final Order**" and together with the Interim Order, the "**Orders**"), (i) authorizing the Debtor to use "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) ("**Cash Collateral**"), (ii) granting adequate protection to prepetition secured parties First Western Bank & Trust, if the Court determines it is necessary, and the Receiptholders, (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Orders, and (iv) granting related relief, including scheduling a hearing to consider approval of this Motion on a final basis (the "**Final Hearing**"). The facts and circumstances supporting this Motion are

set forth in the Declaration of Justin Flaten in Support of Chapter 11 Petition and First Day

Motions (the "**First Day Declaration**"), which was filed contemporaneously herewith and is

incorporated herein by reference.  In further support of this Motion, the Debtor respectfully

states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, and Rule 5005 of the Bankruptcy Rules. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue of the Debtor's Chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408

and 1409.  The petition commencing this Chapter 11 case was filed on June 25, 2019 (the

"**Petition Date**").  The case is currently pending in this Court.

2.      The statutory and other bases for the relief requested in this Motion are sections

105, 361, 362, 363, 503, 507, and 552 of the Bankruptcy Code and Bankruptcy Rules 2002,

4001, 6003, 6004 and 9014.

## BACKGROUND INFORMATION

3.      On the Petition Date, the Debtor commenced a voluntary case under Chapter 11

of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and

manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. To date, no trustee, examiner or statutory committee has been appointed in

this Chapter 11 case. Additional factual background relating to the Debtor's business, capital

structure, and the commencement of this Chapter 11 case is set forth in detail in the First Day

Declaration.

## RULE 4001 STATEMENT

4.      Rule 4001 of the Bankruptcy Rules mandates that a motion for authority to use cash collateral include a concise statement of the relief requested summarizing:  (i) the name of each entity with an interest in the cash collateral; (ii) the purpose for the use of the cash collateral; (iii) the material terms, including duration, of the use of the cash collateral; and (iv) any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional adequate protection is proposed, an explanation of why each entity's interest is deemed adequately protected.

## DEBTOR'S PREPETITION SECURED DEBT

### A.    *First Western Secured Debt.*

5.      On March 10, 2016, Debtor as Borrower and First Western Bank & Trust ("**First Western**") as Lender entered into an Line of Credit Agreement (the "**First Western LOC**") not to exceed $2,500,000.00, as such amount may be adjusted from time to time. Interest on the First Western LOC accrues at the rate of 5.5% per annum until paid in full.

6.      On October 4, 2017, Debtor as Borrower and First Western as Lender entered into a Promissory Note for $1,100,000 to purchase equipment (the "**Equipment Loan**"). Payments on the Equipment Loan are $15,842.77 due on the first business day of each month.

7.      As of the Petition Date, the Debtor has secured obligations owing to First Western in the principal amounts of:  $2,438,187.13 on the First Western LOC and $875,539.67 on the Equipment Loan for a total amount of $3,313,727 plus accrued and unpaid interest with respect thereto, fees, costs, and other expenses (the "**First Western Secured Debt**").  The Debtor has granted security interests in all or substantially all of its assets to

secure its obligations under the First Western LOC and Equipment Loan (the "**First Western Prepetition Collateral**").

8.     First Western perfected its security interest in the First Western Prepetition Collateral by virtue of a UCC-1 financing statements filed with the North Dakota Secretary of State's Office on February 4, 2005 as Document No. 05-000229642-0 (continuations filed on 11/4/09 and 2/4/15) and on July 16, 2008 as Document No. 08-000474753-9 (continuations filed on 5/16/13 and 5/30/18).

9.     Detailed information concerning the First Western Prepetition Collateral is attached as **Exhibit B** and demonstrates the First Western Prepetition Collateral has an estimated value of $4,339,033.70 versus a total debt owing of $3,313,727.

10.     First Western also holds mortgages on real property located in Chouteau County, Montana owned by Justin & Melissa Flaten and Arrow Kay Farms Inc. The Justin & Melissa Flaten real property consists of 505 acres with an estimated value of $753,000 and a pre-existing mortgage against it of $76,000. First Western holds a mortgage against the Justin & Melissa Flaten real property with maximum lien of $2,500,000 dated May 14, 2019 and recorded in the Chouteau County Recorder's Office on June 6, 2019 as Document No. 475468.

11.     The Arrow Kay Farms, Inc. real estate consists of 840 acres with an estimated of $1,199,000 with a pre-existing mortgage against it of approximately $289,000. First Western holds a mortgage against the Arrow Kay Farms, Inc. real property with maximum lien of $2,500,000 dated May 14, 2019 and recorded in the Chouteau County Recorder's Office on June 6, 2019 as Document No. 475469. These two mortgages have increased the value of First Western's collateral by $1,587,000 (*i.e.*, $677,000 for the Justin & Melissa Flaten real property and $910,000 for the Arrow Kay Farms, Inc. real property).

12.     Accordingly, the First Western Prepetition Collateral has a value of $4,339,034 and thus, First Western is an oversecured creditor.

**B.     *Receiptholders***

13.     Debtor regularly purchases pulse crops from North Dakota and Montana farmers. As of the Petition Date, the Debtor has the following inventory from North Dakota and Montana farmers stored in the Garrison, ND and Cummings, ND warehouses and the toll processor facility located in Purdue, MT (the "**Receiptholders**"):

| Name | Location | Crop (cwts) | Value |
|---|---|---|---|
| Bryan Rustad | Garrison, ND | 82.59 Green peas | $1,087.12 |
| Ryan Weber | Garrison, ND | 545.80 Yellow peas | $3,944.13 |
| Steve Seidler | Garrison, ND | 485.95 Yellow peas | $4,020.76 |
| Finken Farms & Seeds LLP | Garrison, ND | 889.19 Yellow peas | $9,096.54 |
| Matt Fisher | Cummings, ND | 3,905.97 Chickpea peas | $61,612.26 |
| Larry A. Pease Estate | Garrison, ND | 2,652.52 Red lentils | $32,824.93 |
| James Walsh | Cummings, ND | 2,674.37 Small Green lentils | $37,066.77 |
| Don & Edith Bauman | Garrison, ND | 3,316.95 Green peas | $41,044.36 |
| Lyle Harris | Garrison, ND | 5,060.09 Red lentils | $62,618.67 |
| R&R Grain | Garrison, ND | 11,059.71 Yellow peas | $110,188.67 |
| Pondera Colony | Pardue, MT | 8,213.15 Medium green lentils | $97,572.21 |
| Black Leaf Farms, Inc. | Pardue, MT | 3,713.10 Chickpea peas | $148,728.14 |
| | | **Total:** | **$609,804.56** |

The current inventory identified above as of the Petition Date is hereinafter the "**Receiptholder Prepetition Collateral**".

14.    Pursuant to N.D.C.C. § 60-02-25.1, a superpriority lien is granted in favor of receiptholders who store, sell, or deposit grain in warehouses located in North Dakota. The statute provides

> *Grain contained in a warehouse, including grain owned by the warehouseman, is subject to a first priority lien in favor of outstanding receiptholders storing, selling, or depositing grain in the warehouse. The lien created under this section shall be preferred to any lien or security interest in favor of any creditor of the warehouseman regardless of the time when the creditor's lien or security interest attached to the grain.* Notice of the lien created under this section need not be filed in order to perfect the lien. The lien created by this section is discharged as to grain sold by the warehouseman to a buyer in the ordinary course of business. Such sale does not discharge the lien in favor of an individual receiptholder in the remaining grain in the warehouse.

*See* N.D.C.C. § 60-02-25.1 (emphasis added); *see also In re Woods Farmers Co-op Elevator Co.*, 946 F.2d 1411 (8th Cir. 1991). Montana has an almost identical statute (MT St. 80-4-420).

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

15.    The Debtor does not have available sources of working capital and financing sufficient to carry on the operation of its business without the use of Cash Collateral. Debtor believes the Cash Collateral in this particular case consists of the Debtor's accounts receivables and proceeds from sale of the pulse crops held as inventory in the Garrison, ND and Cummings, ND warehouses and the toll processor facility located in Purdue, MT. The Debtor must be able to use Cash Collateral to fund payroll and other employee-related expenses, pay vendors, and make such other payments as are essential for the continued management and operation of the Debtor's business. Absent the authority to use Cash Collateral, even for a

limited period of time, the continued operation of the Debtor's business would suffer, if not

cease, causing immediate and irreparable harm to the Debtor and its estate and creditors.

Accordingly, the Debtor's immediate access to Cash Collateral is critical to the Debtor's

restructuring efforts and ability to maximize the value of the estate.

## RELIEF REQUESTED

16.     By this Motion, the Debtor requests entry of the Interim Order, substantially in

the form attached hereto as **Exhibit A**:

>       a.     authorizing the Debtor to use Cash Collateral, subject to the terms and
> conditions set forth therein;

>       b.     determining First Western is an oversecured creditor with a sufficient
> equity cushion such that it is adequately protected;

>       c.     authorizing the Debtor to provide adequate protection to   the
> Receiptholders to the extent of any postpetition diminution in value of the
> Receiptholder Prepetition Collateral by granting replacement liens on accounts
> receivable generated from the sale of the Receiptholder Prepetition Collateral to
> preserve the value of their lien(s);

>       d.     modifying the automatic stay imposed by section 362 of the Bankruptcy
> Code to the extent necessary to implement and effectuate the terms of the Orders;

>       e.     waiving any applicable stay (including under Bankruptcy Rule 6004) and
> providing for immediate effectiveness of the Interim Order, and, as applicable, the Final
> Order; and

>       f.     granting related relief, including scheduling the Final Hearing to be held
> as soon as practicable and no later than 30 days after the Petition Date for the Court to
> consider entry of the Final Order.

## BASIS FOR RELIEF REQUESTED

**I.     The Court Should Authorize the Debtor to Use Cash Collateral and Provide
Adequate Protection.**

   ***A.     The Proposed Use of Cash Collateral is Appropriate.***

17.     A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).

18.     As discussed above, absent the use Cash Collateral, the Debtor would not have sufficient working capital to (i) make payments to employees, farmers, vendors, or suppliers, (ii) satisfy ordinary operating costs, or (iii) fund the administrative costs of this Chapter 11 case.

19.     The Debtor's Budget (**Exhibit C**) sets forth all projected cash receipts and cash disbursements over a three-month period (Q3).  The Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtor for the applicable period, and is designed to provide the Debtor with adequate liquidity over such period.

20.     Considering the fundamental need to operate and the Debtor's current and projected cash position, the Debtor submits that its request to use Cash Collateral in accordance with the Budget and pursuant to the terms set forth in the Interim Order is necessary to avoid immediate and irreparable harm and the should be granted immediately, and that the Final Order should be entered after the Final Hearing.

### B.     *The Proposed Adequate Protection is Appropriate.*

21.     Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate

protection of such interest." 11 U.S.C. § 363(e). Although the Bankruptcy Code does not expressly define "adequate protection," section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims. *See* 11 U.S.C. § 361.

22.     As the Eighth Circuit has stated:

> In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the debtor's request for the use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against the risk to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).

23.     First Western is a materially over-secured creditor, having an undisputed equity cushion, and is therefore adequately protected.  Courts have generally held that sufficient adequate protection is an equity cushion of 20%. *See, e.g., Mendoza v. Temple-Inland Mortg. Corp.*, 111 F.3d 1264, 1272 (5th Cir. 1997) (quoting *In Re Kost*, 102 B.R.829, 831 (Bankr. D. Wyo 1989) ("case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection."). In this case, First Western has an equity cushion of approximately 24%.

24.     With respect to the Receiptholders, the Debtor proposes to grant replacement liens on accounts receivables generated by the sale of the Receiptholder Prepetition Collateral to preserve the value of their lien(s). The adequate protection proposed by the Debtor for its use of the Receiptholder Prepetition Collateral satisfies the requirements of Section 363(e), as interpreted by the Eighth Circuit in *Martin*, and does not prejudice the rights of other creditors.

25.     The terms and conditions on which the Debtor may use Cash Collateral has been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code and the Budget requested in the Interim Order is reasonable and appropriate given the circumstances of this Chapter 11 case. Moreover, the Debtor submits that the replacement liens proposed for the Receiptholder are reasonable and in the best interest of the estate because, among other things, it will reduce the amount of prepetition debt owed to the Receiptholders and the Receiptholders have a superpriority interest that essentially trumps First Western's blanket security interest in accounts receivables and inventory.

## II.     The Automatic Stay Should Be Modified on a Limited Basis.

26.     Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362(d)(1) of the Bankruptcy Code, however, permits a debtor or other parties in interest to request modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

27.     Here, certain provisions in the Interim Order contemplate a modification of the automatic stay to: (i) permit the automatic attachment and perfection of the replacement liens for Receiptholders; and (ii) authorize the Debtor to pay in its sole discretion if it has excess funds, and the Receiptholders to retain and apply, payments made pursuant to the terms of the Interim Order.  Stay modifications of this type are standard features for orders governing the use of cash collateral and, in the Debtor's business judgment, are reasonable under the

circumstances. Accordingly, the Debtor requests that the Court authorize the modification of the automatic stay as set forth in the Interim Order.

## **RESERVATION OF RIGHTS**

28.     Except as otherwise set forth herein or in the Interim Order, nothing contained herein is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's right to dispute any claim; (iii) an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (iv) a promise or requirement to pay any prepetition claim; (v) an implication or admission that any particular claim is of a type specified or defined in this Motion; (vi) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vii) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **IMMEDIATE RELIEF IS WARRANTED**
## **UNDER BANKRUPTCY RULES 4001 AND 6003**

29.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. If the motion so requests, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. P. 4001(c)(2).  Bankruptcy Rule 6003 similarly empowers a court

to grant relief within the first twenty-one (21) days after the petition date "to the extent that relief is necessary to avoid immediate or irreparable harm." Fed. R. Bankr. P. 6003.

30.     For the reasons discussed above, entry of the Interim Order authorizing the Debtor to immediately use Cash Collateral up to the amounts set forth in the Budget and granting the other relief requested herein is necessary to avoid a severe disruption in the Debtor's operations at this critical juncture and maximize the value of the Debtor's estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rules 4001 and 6003 to support granting the relief requested herein.

## WAIVER OF STAY AND RELATED REQUIREMENTS UNDER BANKRUPTCY RULES 4001(A)(3), 6004(A) AND 6004(H)

31.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rules 4001(a)(3) and 6004(h). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Additionally, pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As described above, the immediate use of Cash Collateral up to the amounts set forth in the Budget is essential to support continuing business operations and prevent irreparable damage to the Debtor's estate. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3) or Bankruptcy Rule 6004(h), to the extent either such stay applies.

32.     Similarly, for the reasons stated above, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## NOTICE

33.     Notice of this Motion will be given to (i) the U. S. Trustee; (ii) First Western Bank & Trust and the Receiptholders; (iii) holders of the twenty (20) largest unsecured claims; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtor will serve copies of this Motion and any order entered in respect to this Motion.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

34.     Prior to any final hearing on the Motion, the Debtor may enter into a stipulation or agreed order with First Western or any of the Receiptholders concerning the use of cash collateral, adequate protection, and other related matters.  In the event the Debtor enters into such a stipulation, it will seek approval of the stipulation without further notice or hearing pursuant to Bankruptcy Rule 4001(d)(4), and the DEBTOR HEREBY GIVES NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION.

35.     The Debtor hereby gives notice that it may, if necessary, call Jill Motschenbacher, to testify about the factual matters raised in this Motion.

36.     WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, (ii) following the Final

Hearing (if necessary), enter the Final Order, and (iii) grant such other and further relief as is just and proper.

Dated this 25th day of June, 2019.         **VOGEL LAW FIRM**

BY: */s/ Caren W. Stanley*
  Jon R. Brakke (#03554)
  jbrakke@vogellaw.com
  Caren W. Stanley (#06100)
  cstanley@vogellaw.com
  218 NP Avenue
  PO Box 1389
  Fargo, ND  58107-1389
  Telephone:  701.237.6983
  *PROPOSED ATTORNEYS FOR DEBTOR*

3695874.1

## **EXHIBIT A**

**(Interim Order)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.:  19-30359 |
|---|---|
| JM Grain, Inc., | Chapter 11 |
| Debtor. | |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) MODIFYING THE AUTOMATIC STAY

Debtor filed a Motion for Interim and Final Orders for Use of Cash Collateral (the "**Motion**"), pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, and Rules 2002, 4001 and 9014, seeking entry of an order to use cash collateral and provide adequate protection.  Appearances were as noted on the record.

Notice of the interim hearing on the Motion (the "**Interim Hearing**") having been given in the manner set forth in the Motion; and the Interim Hearing having been held by this Court on _____, 2019; and upon the record made by the Debtor at the Interim Hearing; and upon the Declaration of Justin Flaten; and this Court having heard and resolved or overruled all pending objections, if any, to the relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and after due deliberation and consideration and sufficient cause appearing therefor; and for the reasons stated as the Interim Hearing,

**IT IS ORDERED**

1.      <u>Motion Granted</u>.  The Motion is granted, subject to the terms and conditions set forth in this Interim Order. The Debtor shall not use Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court.

2.      <u>Objections Overruled</u>. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or resolved at the Interim Hearing, and (except as set forth herein) all reservations of rights included therein, are hereby denied and overruled.

3.      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, a copy of which was filed as **<u>Exhibit C</u>** to the Motion [Doc. XX, page __], the Debtor is authorized to use Cash Collateral for the period (the "**Interim Period**") from the Petition Date through the Final Hearing Date.  All Cash Collateral use must be strictly in accordance with the terms of the Budget.

4.      <u>Budget Maintenance</u>. The Budget may be amended or modified in writing from time to time only with the consent of First Western and the Receiptholders and as allowed under 11 U.S.C. § 363(c)(2)(A).

5.      <u>Adequate Protection Liens</u>.  As adequate protection against any diminution in value of the Receiptholder Prepetition Collateral, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtor is authorized to grant to the Receiptholders additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "**Receiptholders Adequate Protection Liens**") on any and all presently owned and hereafter acquired accounts receivable

generated from the sale of the Receiptholder Prepetition Collateral[1], together with any proceeds thereof (collectively, the "**Receiptholder Collateral**").

6.    <u>First Western Adequately Protected</u>. The Court finds First Western is adequately protected by virtue of an equity cushion of approximately 24%.

7.    <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the automatic attachment and perfection of the Receiptholders Adequate Protection Liens.

8.    <u>Perfection of Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Receiptholder Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Receiptholder Adequate Protection Liens, or to entitle the Receiptholders to the priorities granted herein. Notwithstanding the foregoing, the Receiptholders are authorized to file, as they may deem necessary in their sole discretion, such financing statements, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Receiptholder Adequate Protection Liens, and all such financing statements, notices and other documents

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Receiptholder Adequate Protection Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the Receiptholders all such financing statements, notices and other documents as the Receiptholders may reasonably request. The Receiptholders, in their sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

9.      Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

10.     Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

11.     Reservation of Rights. The rights of all parties to raise any and all arguments with respect to any further interim orders, or any final order, regarding the Motion are preserved and nothing in this Interim Order shall prejudice any such rights with respect to the use of Cash Collateral under such further orders.

12.     Final Hearing. The Final Hearing is scheduled for [_____, 2019] before this Court. The Debtor shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties that have been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to a Committee (if and when appointed). Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which shall be served upon:  (a)  Vogel

4

Law Firm, 218 NP Ave., Fargo, ND 58107-1390 (ATTN: Caren Stanley and Jon Brakke),

counsel for Debtor; (b) First Western and the Receiptholders as noted on the service list

attached as **Exhibit 1**; and (c) the office of the United States Trustee Region 12, 300 South

Fourth Street, Suite 1015, Minneapolis, Minnesota 55415, in each case to allow actual receipt

by the foregoing no later than [_____, 2019], or such later date as agreed by the parties

or ordered by the Court.

Dated this _____ day of June, 2019.

_____
SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT

# **EXHIBIT 1**

**(Service List for First Western and Receiptholders)**

**Secured Creditors**
**(First Western Bank and Receiptholders)**

First Western Bank & Trust
P. O. Box 1090
900 South Broadway
Minot, ND 58702
Fax: 701-857-7143

*North Dakota Farmers*

Bryan Rustad
1823 50th Ave NW
Garrison, ND 58540

Don & Edith Bauman
2592 61st Ave NW
Ryder, ND  58779

Finken Farms & Seeds LLP
16300-359th Ave SW
Douglas, ND  58735

James Walsh
2800 42nd St NE
Minot, ND  58703

Larry A. Pease Estate
Harvey Huber
680 48.5 Ave NW
Hazen, ND  58545

Lyle Harris
8525 Sleepy Hollow Lane
Elk Grove, CA  95757

Matt Fisher
825 2nd Ave NW
Mercer, ND  58559

R&R Grain
110 Main Ave North
Regent, ND  58650

Ryan Weber
2241 29th Ave SW
Center, ND  58530

Steve Seidler
1760 34th Ave NW
Garrison, ND  58540

*Montana Farmers*

Black Leaf Farms, Inc.
5130 US Highway 89
Choteau, MT  59422

Pondera Colony
300 Pondera Colony Rd
Valier, MT  59486

**<u>EXHIBIT B</u>**

**(Collateral Value)**

| JM GRAIN, INC. | | | |
|---|---|---|---|
| **VALUE OF COLLATERAL OF** | | | |
| **FIRST WESTERN BANK & TRUST** | | | |

| COLLATERAL DESCRIPTION | VALUE OF COLLATERAL | OTHER LIENS | EQUITY TO BANK |
|---|---|---|---|
| **CURRENT ASSETS** | | | |
| Cash / Checks on Hand | $73,443.42 | 0 | $73,443.42 |
| Depository Accounts | | | |
| > First Western State Bank | $0.01 | 0 | $0.01 |
| > US Bank | $90,031.12 | 0 | $90,031.12 |
| > Garrison State Bank | $0.00 | 0 | $0.00 |
| Accounts Receivable | $666,436.65 | 0 | $666,436.65 |
| | | | |
| **FIXED ASSETS** | | | |
| Inventory (Grain) | $773,000.00 | $609,804.50  * | $163,195.50 |
| Processing Equipment | $1,209,901.00 | 0 | $1,209,901.00 |
| Elevator, Warehouse & Office Equipment | $441,134.00 | 0 | $441,134.00 |
| Non-Titled Vehicles | $107,892.00 | 0 | $107,892.00 |
| Real Property | | | |
| > Arrow Kay Farms Inc. Mortgage on Real Property | | | |
| in Chouteau County, Montana (840 Acres) | $1,199,000.00 | $289,000.00  ** | $910,000.00 |
| | | | |
| > Justin and Melissa Flaten Mortgage on Real Property | | | |
| in Chouteau County, Montana | $753,000.00 | $76,000.00  ** | $677,000.00 |
| | | | |
| **TOTAL COLLATERAL OF FIRST WESTERN BANK & TRUST:** | $5,313,838.20 | $974,804.50 | $4,339,033.70 |

*Receiptholder prepetition collateral.
**First Western Bank & Trust holds second-position lien in this property.

# **EXHIBIT C**

**(Budget)**

|  | June 25 to June 30 | July | August | September |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| Cash / Checks on Hand | 73,443.42 | | | |
| Depository Accounts | | | | |
|    First Western State Bank | 0.01 | | | |
|    US Bank | 90,031.12 | | | |
|    Garrison State Bank | - | | | |
| Total Cash / Checks on Hand | **163,474.55** | | | |
| **Income** | | | | |
|    Accounts Receivables (AR) | | 250,000.00 | 200,000.00 | 150,000.00 |
|    Freight Income | 5,140.00 | 23,385.19 | 25,577.55 | 24,115.98 |
|    Pulse Crop Sales | 159,141.00 | 705,386.88 | 766,829.40 | 725,867.72 |
|      **Total Income** | **164,281.00** | **978,772.07** | **992,406.95** | **899,983.70** |
| **Cost of Goods Sold** | | | | |
|    Product - Pulse Crops from New Sales | 110,767.40 | 451,447.60 | 498,439.11 | 471,814.02 |
|    Farmers Secured by AR | | 265,201.10 | 180,772.23 | 163,831.23 |
|    Freight | 12,752.39 | 116,726.97 | 126,894.44 | 120,116.13 |
|    Packaging Supplies | 3,600.00 | 9,552.70 | 10,384.79 | 9,830.06 |
|    Processing | 12,760.00 | 28,215.48 | 30,673.18 | 29,034.71 |
|      **Total COGS** | **139,879.79** | **871,143.85** | **847,163.75** | **794,626.15** |
| **Gross Profit** | **24,401.21** | **107,628.22** | **145,243.20** | **105,357.55** |
| **Expense** | | | | |
|    Accounting Costs | - | 500.00 | 500.00 | 500.00 |
|    Attorney Fees | - | 10,000.00 | 10,000.00 | 5,000.00 |
|    Demurrage | - | 1,116.88 | 1,221.58 | 1,151.78 |
|    Dues and Subscriptions | - | 374.16 | 409.24 | 385.86 |
|    Employee Benefit (HSA) | 560.00 | 1,120.00 | 1,120.00 | 1,120.00 |
|    Grain Grading Expense | | 3,866.98 | 4,229.50 | 3,987.82 |
|    Grain Storage | | 1,559.01 | 1,705.17 | 1,607.73 |
|    Insurance - Auto, Casualty and General | 5,476.00 | 3,333.33 | 3,333.33 | 3,333.33 |
|    Insurance - Unum | - | 550.00 | 550.00 | 550.00 |
|    Insurance - BCBS | 5,409.00 | 5,409.00 | 5,409.00 | 5,409.00 |
|    Licenses and Permits | - | 747.68 | 817.77 | 771.04 |
|    Marketing | - | 374.16 | 409.24 | 385.86 |
|    Payroll Expenses | 12,500.00 | 53,000.00 | 53,000.00 | 53,000.00 |
|    Payroll Retirement | 1,030.00 | 2,060.00 | 2,060.00 | 2,060.00 |
|    Phytos | | 85.96 | 94.02 | 88.65 |
|    Postage and Delivery | - | 155.90 | 170.52 | 160.77 |
|    Rent | - | 2,008.58 | 2,008.58 | 2,008.58 |
|    Shop Maintenance | - | 3,204.84 | 3,505.29 | 3,304.99 |
|    Travel non marketing related | - | 623.61 | 682.07 | 643.09 |
|    Truck Expenses | - | 3,975.48 | 4,348.18 | 4,099.72 |
|    Utilities | 2,450.00 | 4,900.00 | 4,900.00 | 4,900.00 |
|      **Total Expense** | **27,425.00** | **98,965.57** | **100,473.49** | **94,468.22** |
| **Net Ordinary Income** | **-3,023.79** | **8,662.65** | **44,769.71** | **10,889.33** |
| **Monthly Net cash Flow** | **160,450.76** | **26,234.86** | **28,713.83** | **29,617.47** |
| **Cumulative Net Cash Flow** | **160,450.76** | **186,685.62** | **215,399.45** | **245,016.92** |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 19-30359 |
|---|---|
| | Chapter 11 |
| JM Grain, Inc., | |
| Debtor. | |

## CERTIFICATE OF SERVICE

I, Jill Nona, declare under penalty of perjury that on June 25, 2019, the following

document was served either electronically via CM/ECF or by US Mail at the indicated address:

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503, 507, AND 552, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

| **U.S. Trustee** | Office of the U.S. Trustee Region 12 | 300 South Fourth St, Suite 1015 Minneapolis, MN 55415 |
|---|---|---|
| **Secured Creditors (First Western Bank and Receiptholders)** | First Western Bank & Trust | P. O. Box 1090 900 South Broadway Minot, ND 58702 Fax: 701-857-7143 |
| ***North Dakota Farmers:*** | Bryan Rustad | 1823 50th Ave NW Garrison, ND 58540 |
| | Don & Edith Bauman | 2592 61st Ave NW Ryder, ND 58779 |
| | Finken Farms & Seeds LLP | 16300-359th Ave SW Douglas, ND 58735 |
| | James Walsh | 2800 42nd St NE Minot, ND 58703 |
| | Larry A. Pease Estate Harvey Huber | 680 48.5 Ave NW Hazen, ND 58545 |

|  | Lyle Harris | 8525 Sleepy Hollow Lane Elk Grove, CA  95757 |
|  | Matt Fisher | 825 2nd Ave NW Mercer, ND  58559 |
|  | R&R Grain | 110 Main Ave North Regent, ND  58650 |
|  | Ryan Weber | 2241 29th Ave SW Center, ND  58530 |
|  | Steve Seidler | 1760 34th Ave NW Garrison, ND  58540 |
| ***Montana Farmers:*** | Black Leaf Farms, Inc. | 5130 US Highway 89 Choteau, MT  59422 |
|  | Pondera Colony | 300 Pondera Colony Rd Valier, MT  59486 |
| **Twenty Largest Unsecured Creditors** | AGT Foods | 1611 E. Century Ave., Suite 102 Bismarck, ND  58503-0780 |
|  | American Express | PO Box 650448 Dallas, TX  75265-0448 |
|  | BNSF Railway Company | 3110 Solutions Center Chicago, IL  60677-3001 |
|  | Buhler Inc. | 28064 Network Place Chicago, IL  60673-1280 |
|  | Canadian Pacific Railway Co. SOO Line Railroad Company | 8290 Collection Center Dr. Chicago, IL  60693-0082 |
|  | Central Bag Company | PO Box 37 Lansings, KS  66043 |
|  | Commercial Lynks Inc. | 4709B Eisenhower Ave. Alexandria, VA  22304 |
|  | Cummings Ag Inc. | PO Box 152 Buxton, ND  58218 |
|  | Dahl Trucking LLC | 9240 HWY 1 South Langdon, ND  58249 |
|  | FBN CM LLC | 1627 W. Main Bozeman, MT  59715 |
|  | FreightQuote | PO Box 9121 Minneapolis, MN  55480-9121 |
|  | Jacintoport International LP Dept. 1201 | PO Box 121201 Dallas, TX  75312-1201 |
|  | Koelnmesse GmbH | Messepl. 1, Köln 50679 GERMANY |
|  | Minot Grain Inspection, Inc. | PO Drawer B Minot, ND  58702-0210 |

|  | Pardue Grain<br>Roger Samons | 64 Pardue Road<br>Cut Bank, MT  59427 |
|--|--|--|
|  | Rademacher Trucking Inc.<br>Kevin Rademacher-MC<br>281148 | 5767 N. 17th Ave.<br>Norwich, ND  58768 |
|  | Ray-Mont Logistics America<br>Inc. | 1751 Richardson, Suite 4.500<br>Montreal, QC H3K 1G6<br>CANADA |
|  | Safflower Technologies<br>International | PO Box 907<br>112 S 1st Ave #3A<br>Laurel, MT  59044 |
|  | Trinity Logistics | PO Box 62702<br>Baltimore, MD  21264 |
|  | Union Pacific Railroad<br>Company | PO Box 502453<br>Saint Louis, MO  63150-2453 |

Dated this 25th day of June, 2019.


/s/ Jill Nona
Jill Nona

STATE OF NORTH DAKOTA        )
                             )  SS
COUNTY OF CASS               )


Subscribed and sworn to before me this 25th day of June, 2019.

/s/ Katherine Johnson
Notary Public
State of North Dakota
My Commission Expires: April 17, 2022